UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LISA GREENLUND,<br>    Plaintiff | :<br>:<br>: |
| v. | :     C.A. No.: |
| | : |
| THE STATE OF RHODE ISLAND,<br>Department of Behavioral Healthcare<br>Developmental Disabilities and Hospitals,<br>    Defendant | :<br>:<br>:<br>: |

## COMPLAINT

### I. Introduction

This action is brought by the Plaintiff seeking declaratory and injunctive relief, attorney's fees and litigation expenses and other equitable relief, including back pay, as well as compensatory and punitive damages to remedy unlawful discrimination in employment the Plaintiff suffered in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e, *et seq.*, the Rhode Island Fair Employment Practices Act ("FEPA"), R.I.G.L. §28-5-1, *et seq.*, and the Rhode Island Civil Rights Act of 1990 ("RICRA"), R.I.G.L. §42-112-1, *et seq.*

### II. Parties

1. The Plaintiff is a resident of the Town of North Kingstown, County of Washington, State of Rhode Island.

2. Defendant the State of Rhode Island Department of Behavioral Healthcare, Developmental Disabilities and Hospitals ("BHDDH"), is a department created pursuant to R.I.G.L. §42-12.1-1, *et seq.*, within the executive department of the State of Rhode Island, which said State is a covering state of the United States.

### III. Jurisdiction

3. This Court has jurisdiction over Plaintiff's claims under Title VII pursuant to 42 U.S.C. §2000e-5(f)(3) and supplemental jurisdiction over the Plaintiff's claims under the FEPA and the RICRA pursuant to 28 U.S.C. §1367.

### IV. Venue

4. Venue is proper in this Court insofar as a substantial portion of the events or omissions giving rise to the within claim occurred in Rhode Island in compliance with the requirements set forth in 28 U.S.C. §1391.

### V. Exhaustion of Administrative Remedies

5. On or about September 1, 2020, the Plaintiff timely filed a charge of discrimination against Defendant Union with the Rhode Island Commission for Human Rights ("RICHR"), RICHR No. 21 ESE 036-28/02, and the United States Equal Employment Opportunity Commission ("EEOC"), EEOC No. 16J-2020-00206.

6. On or about January 6, 2021, more than one hundred twenty (120) days, but less than two (2) years after the charge was filed, the Plaintiff requested that the RICHR and the EEOC issue a right to sue letter.

7. On or about January 7, 2021, the Plaintiff was issued a notice of right to sue by the RICHR and has timely instituted suit thereon.

8. On or about January 29, 2021, the Plaintiff was issued a notice of right to sue by the EEOC and has timely instituted suit thereon.

9. There is no requirement under the RICRA relative to the exhaustion of administrative remedies.

## VI. Material Facts

10. In June, 2018, the Plaintiff started at Defendant BHDDH as Security Manager.

11. From July, 2018 to September, 2018, the Plaintiff was asked to fill-in and train three (3) new Defendant BHDDH non-security employees.

12. In September, 2018, the Plaintiff was assigned to create an Environment of Care ("EOC") program.

13. Defendant BHDDH hired a temporary employee to assist the Plaintiff with the aforementioned EOC program.

14. In October, 2018, the Plaintiff was promoted from Associate Administrator to Administrator at Defendant BHDDH.

15. In June, 2019, Todd Tinkham ("Tinkham"), former Associate Director of Environment of Care at Defendant BHDDH, was placed on administrative leave.

16. In June, 2019, the Plaintiff assumed Mr. Tinkham's duties and/or responsibilities during his administrative leave. At this time, Defendant BHDDH implemented its three (3) day rule, which allowed the Plaintiff to get paid at a higher salary after three (3) days of assuming these new duties and/or responsibilities.

17. In September, 2019, Mr. Tinkham returned to Defendant BHDDH from his administrative leave.

18. Following Mr. Tinkham's return to Defendant BHDDH in the position of Space Planner, the Plaintiff contacted Christopher Feisthamel ("Feisthamel"), Chief Operating Officer at Defendant BHDDH, to discuss Mr. Tinkham's return.

19. On September 10, 2019, the Plaintiff met with Mr. Feisthamel and Cynthia Huether ("Huether"), former Chief Executive Officer at Defendant BHDDH. During this meeting, Mr.

Feisthamel acknowledged the Plaintiff's strong performance under Defendant BHDDH's three (3) day rule.

20.   During this meeting, Mr. Feisthamel also offered the Plaintiff the Associate Director of Environment of Care position at two (2) paygrades lower than Mr. Tinkham.

21.   In response to Mr. Feisthamel's offer, the Plaintiff stated that she would not work as Associate Director at two (2) paygrades lower than the former Associate Director (Mr. Tinkham) and that she would not be "paid less than a man."

22.   During this meeting, Ms. Huether told Mr. Feisthamel that the Plaintiff's "depth of knowledge" is much broader than Mr. Tinkham's and that her paygrade as Associate Director should not be lower than Mr. Tinkham's.

23.   On September 13, 2019, Mr. Feisthamel gave the Plaintiff a letter, dated September 6, 2019, stating that her three (3) day rule ceased on September 3, 2019.  He also stated to the Plaintiff that he wanted to implement a new three (3) day rule.

24.   In response to Mr. Feisthamel's letter, the Plaintiff told him that her pay grade should be swapped due to changes in her duties and responsibilities and Mr. Tinkham's changes to a position with less responsibilities.  However, Mr. Feisthamel stated that Mr. Tinkham would remain in the 42-pay grade slot.

25.   On September 15, 2019, the Plaintiff expressed no interest in an additional three (3) day rule.

26.   On September 17, 2019, the Plaintiff invited Mr. Feisthamel and Ms. Huether to an EOC staff meeting to address Mr. Tinkham's return to Defendant BHDDH.

27. Later that same day, Mr. Feisthamel and Genevieve Simard ("Simard"), a Human Resource Analyst at Defendant BHDDH, interviewed EOC staff and verbally disciplined the Plaintiff for being "too open with staff."

28. On September 18, 2019, Mr. Feisthamel told Dave Brouillette ("Brouillette"), Chief Property Manager at Defendant BHDDH, that the Plaintiff is an "HR issue."

29. In addition, Mr. Feisthamel told Mr. Brouillette that he "doesn't know what he is doing" and "needs help."

30. In October, 2019, Ms. Huether added the Plaintiff to Defendant BHDDH's Administrator on Call ("AOC") list. However, Ms. Huether did not add Mr. Tinkham to the AOC list.

31. On January 6, 2020, Defendant BHDDH's Essential Employee Policy change referred to the Plaintiff as Director of EOC.

32. Since January, 2020, Mr. Feisthamel has perpetually undermined the Plaintiff's authority and expertise. In fact, Mr. Feisthamel failed and/or refused to address technical, environmental, and/or behavioral concerns that she expressed in writing and in person.

33. On January 21, 2020, Mr. Brouillette removed all building keys from Defendant BHDDH's EOC office without informing the Plaintiff and/or any other Defendant BHDDH employee and/or agent beforehand, or providing a documented hand-off with EOC staff.

34. Thereafter, the Plaintiff asked Mr. Feisthamel and Ms. Huether to intervene and help reconcile the key issue with Mr. Brouillette.

35. Mr. Feisthamel and Ms. Huether failed and/or refused to follow-up with the Plaintiff's request.

36. Since January, 2020, Mr. Brouillette has continued to withhold building keys from Defendant BHDDH's EOC staff.

37. On February 14, 2020, Mr. Brouillette reprimanded the Plaintiff in front of several other Defendant BHDDH employees and/or agents regarding hospital medical gas deficiencies.

38. On or about April 23, 2020, Mr. Feisthamel removed the Plaintiff as EOC Chairperson.

39. On or about April 29, 2020, Mr. Feisthamel took over as EOC Chairperson even though he did not have previous domain expertise.

40. In May, 2020, Mr. Brouillette again reprimanded the Plaintiff in front of several other Defendant BHDDH employees and/or agents.

41. On May 13, 2020, the Plaintiff sent an e-mail to Thomas Nangle ("Nangle"), Chief Property Management at Defendant BHDDH, outlining Mr. Feisthamel and Mr. Brouillette's discriminatory conduct. Specifically, the Plaintiff explained that Mr. Feisthamel was aware of Mr. Brouillette's discriminatory conduct towards her and failed and/or refused to reprimand Mr. Brouillette for same.

42. In addition, the Plaintiff explained that Mr. Feisthamel and Ms. Huether were behind several of Mr. Brouillette's emails to her and that Mr. Feisthamel met with Mr. Brouillette to try to "get dirt on [her] and the keys."

43. Shortly thereafter, Mr. Brouillette was suspended for his behavior towards Defendant BHDDH employees. However, on May 22, 2020, Mr. Feisthamel and Ms. Huether met with Defendant BHDDH's human resource department and requested that Mr. Brouillette be placed back at Defendant BHDDH because the Plaintiff was the "problem at Eleanor Slater Hospital."

44. On June 12, 2020, the Plaintiff sent an e-mail to Louis Cerbo ("Cerbo"), Deputy Director at Defendant BHDDH, Nancy Fogarty ("Fogarty"), Chief Quality Officer at Defendant BHDDH, and Jennifer White ("White"), Interim CEO for Eleanor Slater Hospital, stating that "…the situation with Mr. Feisthamel has become unbearable. The intimidation, bullying, and ongoing harassment continues." Also, the Plaintiff's scheduled office move was rescheduled following the Plaintiff's June 5, 2020 disclosure to BHDDH leadership that building fire safety issues were not being addressed by Mr. Feisthamel and Ms. Huether because Mr. Feisthamel told Ms. Fogarty that he did "not want [her] to have it because it's [her]," in reference to the new office.

45. In addition, Mr. Brouillette alienated the Plaintiff from one of her staff members, even though she specifically asked for his help in managing and re-directing her.

46. Mr. Feisthamel continually overrides resource decisions to sabotage Defendant BHDDH's EOC Department.

47. In response to the Plaintiff's complaints of discrimination, Defendant BHDDH's human resources personnel initiated an investigation, meeting with the Plaintiff on one occasion and reviewed a partial time-line of events and supporting documentation. Defendant BHDDH's human resources personnel refused to meet with the Plaintiff on the remaining time-line of events and closed its investigation.

48. The forced discriminatory terms and conditions of employment the Plaintiff experienced were due to her female gender and were offensive, severe and pervasive and adversely effected the terms and conditions of her employment and deprived her of the right to work in a non-discriminatory work environment.

49. Defendant BHDDH's discriminatory and retaliatory actions and/or omissions are in violation of Title VII, the FEPA, and the RICRA and were motivated by malice and ill will

toward the Plaintiff. Defendant's actions were intentional, willful, malicious, and taken with reckless and callous indifference to the statutorily protected rights of the Plaintiff.

50. As a proximate result of Defendant BHDDH's unlawful acts and/or omissions, including, but not limited to, those described herein, the Plaintiff suffered emotional distress, loss of enjoyment of life, humiliation, damage to her business and personal reputation and other great harm.

## VII. Claims For Relief

51. The Plaintiff incorporates in the counts below the allegations contained in paragraphs 1-50 above.

### Count One
### Unlawful Discrimination—42 U.S.C. §2000e, *et seq.*

52. Defendant, by its acts and/or omissions, including, but not limited to, those described herein, constitute unlawful discrimination and retaliation against the Plaintiff in employment on account of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under Title VII.

### Count Two
### Unlawful Discrimination—R.I.G.L. §28-5-1, *et seq.*

53. Defendant, by its acts and/or omissions, including, but not limited to, those described herein, constitute unlawful discrimination and retaliation against the Plaintiff in employment on account of her gender in violation of the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, *et seq.*, causing the Plaintiff to suffer damages as aforesaid and thereby deprived the Plaintiff of rights secured under the FEPA.

### Count Three
### Unlawful Discrimination—R.I.G.L. §42-112-1, *et seq.*

54. Defendant, by its acts and/or omissions, including, but not limited to, those described herein, constitute unlawful discrimination and retaliation against the Plaintiff in employment on account of her gender in violation of the Rhode Island Civil Rights Act of 1990, R.I.G.L. §42-112-1, *et seq.*, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the RICRA.

### VIII. Prayers for Relief

**WHEREFORE**, the Plaintiff respectfully prays that this Court grant the following relief:

1. a declaratory judgment that the Defendant, in the manner described herein, unlawfully discriminated against the Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, *et seq.*, and the Rhode Island Civil Rights Act of 1990, R.I.G.L. §42-112-1, *et seq.*;

2. enjoining and permanently restraining the Defendant from violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, the Rhode Island Fair Employment Practices Act, R.I.G.L. §28-5-1, *et seq.*, and the Rhode Island Civil Rights Act of 1990, R.I.G.L. §42-112-1, *et seq.*;

3. award the Plaintiff back pay, including incremental increases, health and dental benefits and other benefits, plus prejudgment interest thereon;

4. award the Plaintiff compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, plus prejudgment interest thereon;

5. award the Plaintiff punitive damages;

6. award the Plaintiff reasonable attorney's fees and costs of litigation; and,

7. such other and further relief as the Court deems just and proper.

## IX. Demand for Jury Trial

The Plaintiff hereby demands a trial by jury on all counts so triable.

## X. Designation of Trial Counsel

The Plaintiff hereby designates V. Edward Formisano, Esquire, Michael D. Pushee, Esquire, and Jessica A. Roberge, Esquire, as trial counsel.

>PLAINTIFF,
>By her attorneys,
>**FORMISANO & COMPANY, P.C.**

Dated: February 9, 2021

/s/ V. Edward Formisano
V. Edward Formisano (#5512)

/s/ Michael D. Pushee
Michael D. Pushee (#6948)

/s/ Jessica A. Roberge
Jessica A. Roberge (#10179)
100 Midway Place, Suite 1
Cranston, RI 02920-5707
(401) 944-9691
(401) 944-9695 (facsimile)
edf@formisanoandcompany.com
mpushee@formisanoandcompany.com
jroberge@formisanoandcompany.com

## CERTIFICATION

I hereby certify that on the 9th day of February, 2021, I caused the within to be electronically filed with the Clerk of the U.S. District Court for the District of Rhode Island using the CM/ECF System.

/s/ V. Edward Formisano